**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| ZENIMAX MEDIA INC. AND ID SOFTWARE LLC, | |
| Plaintiffs, | Civil Action No. No. 3:17-cv-01288-D |
| v. | JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC., | |
| Defendants. | |

**DEFENDANTS' MOTION TO STAY PROCEEDINGS
PENDING THE RESOLUTION OF THE RELATED
*OCULUS* MATTER AND BRIEF IN SUPPORT**

**BAKER BOTTS L.L.P.**
Timothy S. Durst
Texas Bar No. 00786924
tim.durst@bakerbotts.com
Russell J. Crain
Texas Bar No. 24045717
russ.crain@bakerbotts.com
Kristin Cope
Texas Bar No. 24074072
kristin.cope@bakerbotts.com
2001 Ross Avenue, Suite 1100
Dallas, TX 75201

Neil P. Sirota
neil.sirota@bakerbotts.com
30 Rockefeller Plaza
New York, NY 10112

Sarah J. Guske
sarah.guske@bakerbotts.com
101 California Street, Suite 3600
San Francisco, CA 94111

**COUNSEL FOR SAMSUNG ELECTRONICS
CO., LTD. and SAMSUNG ELECTRONICS
AMERICA, INC.**

# TABLE OF CONTENTS

**Page**

I.  Introduction ........................................................................................................1

II.  Background ........................................................................................................2

    A.  ZeniMax sued Oculus on claims related to VR technology ..................................... 2

    B.  ZeniMax raised particular factual and legal issues against Oculus .......................... 2

    C.  The *Oculus Litigation* jury decided issues litigated in that case ............................... 3

    D.  ZeniMax now has sued Samsung raising largely-overlapping issues and claims ..... 3

III.  The Court Should Stay This Case Pending Final Resolution Of The *Oculus Litigation* .....4

    A.  This Court should stay this case out of concern for judicial efficiency .................... 4

        1.  The Court should stay this case to avoid duplicative litigation and inconsistent rulings ...................................................................................5

        2.  A stay will conserve judicial resources by streamlining the issues for trial ................................................................................................9

        3.  The anticipated impact of issue preclusion supports a stay ...........................11

        4.  The early stage of this case favors a stay ......................................................13

    B.  Samsung will suffer harm if forced to defend invasive and expensive litigation on issues that may ultimately be moot ............................................................. 14

    C.  ZeniMax will not be unduly prejudiced by staying this litigation .......................... 14

    D.  The requested stay is of finite duration and appropriate given the type of evidence involved.......................................................................................... 15

IV.  Conclusion ......................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Adaptix, Inc. v. AT&T Mobility LLC*,
  No. 6:12-CV-120, 2015 WL 12696204 (E.D. Tex. May 12, 2015) ................................10, 11

*Adaptix, Inc. v. Pantech Wireless, Inc.*,
  No. 6:13CV778, 2016 WL 7364674 (E.D. Tex. Jan. 12, 2016) ............................6, 11, 12, 13

*Andrews v. United States*,
  No. 4:05-CV-419, 2007 WL 2315964 (E.D. Tex. Aug. 10, 2007) ........................................15

*Coker v. Select Energy Servs., LLC*,
  161 F. Supp. 3d 492 (S.D. Tex. 2015) ...............................................................................5, 11

*Cont'l Holdings, Inc. v. Liberty Mut. Ins. Co.*,
  No. CIVA 09-00595, 2009 WL 3179257 (W.D. La. Sept. 29, 2009)......................................5

*Greco v. Nat'l Football League*,
  116 F. Supp. 3d 744 (N.D. Tex. 2015) ...................................................................4, 9, 10, 15

*Hansberry v. Lee*,
  311 U.S. 32 (1940).................................................................................................................11

*Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. and Cmty. Affairs*,
  No. 3:08-CV-0546-D, 2014 WL 2815683 (N.D. Tex. June 23, 2014)............................10, 14

*Int'l Assoc. of Machinists and Aerospace Workers v. Nix*,
  512 F.2d 125 (5th Cir. 1975) ................................................................................................12

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936).....................................................................................................4, 14, 15

*Landmark Tech., LLC v. iRobot Corp.*,
  No. 6:13cv411 JDL, 2014 WL 486836 (E.D. Tex. Jan. 24, 2014) ........................................13

*Lincoln Gen. Ins. Co. v. Autobuses Tierra Caliente, Inc.*,
  CIV. A. 3:04-CV-1535–L, 2006 WL 2474096 (N.D. Tex. Aug. 28, 2006) ...........................11

*Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*,
  922 F. Supp. 2d 486 (D. Del. 2013)......................................................................................13

*Miramore Trust v. United Van Lines, LLC*,
  No. 3:15-CV-3049-D, 2017 WL 661374 (N.D. Tex. Feb. 17, 2017) .......................................4

*Nelson v. Grooms*,
   307 F.2d 76 (5th Cir. 1962) .................................................................................5

*Save Power Ltd. v. Syntek Fin. Corp.*,
   121 F.3d 947 (5th Cir. 1997) ...............................................................................9

*Straight Path IP Grp., Inc. v. Verizon Commc'ns Inc.*,
   No. 16-CV-4236, 2016 WL 6094114 (S.D.N.Y. Oct. 18, 2016)...........................14

*Taylor v. Sturgell*,
   553 U.S. 880 (2008)...............................................................................6, 11, 12

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*,
   617 F.3d 1296 (Fed. Cir. 2010)..........................................................................11

*Trinity Indus., Inc. v. 188 L.L.C.*,
   No. 3:02-CV-405-H, 2002 WL 1315743 (N.D. Tex. June 13, 2002).......................5, 8, 10, 16

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
   759 F.3d 1307 (Fed. Cir. 2014)..........................................................................13

*Wolf Designs, Inc. v. Donald McEvoy Ltd.*,
   341 F. Supp. 2d 639 (N.D. Tex. 2004) .................................................4, 9, 10, 15

## OTHER AUTHORITIES

N.D. Tex. Civ. L.R. 3.3.........................................................................................4

This case should be stayed because Plaintiffs' allegations mirror their case against Defendants' licensor, which was tried to a jury and is awaiting entry of judgment in Judge Kinkeade's court.  Proceeding with this case before the other has concluded risks inconsistent rulings, judicial inefficiency, and wasteful relitigation of overlapping issues.  Waiting on that case would not prejudice Plaintiffs, as a stay would not impair any remedy on claims that remain after their other case concludes.

Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung") request the Court to stay this case pending the adjudication of the post-trial and appellate proceedings in *ZeniMax Media Inc. v. Oculus VR LLC*, No. 3:14-CV-01849-K (N.D. Tex.) (the "*Oculus Litigation*").

## I.    Introduction.

In this case, Plaintiffs ZeniMax Media Inc. and id Software LLC (collectively, "ZeniMax") allege that Oculus VR LLC's ("Oculus") virtual reality ("VR") technology violates ZeniMax's intellectual property rights.  ZeniMax also alleges that Samsung is somehow liable to ZeniMax because Oculus licensed its VR technology to Samsung.   These allegations are essentially identical to ZeniMax's allegations in the *Oculus Litigation*.  Although Samsung was not a party to the *Oculus Litigation*, the final outcome of that case will impact, and indeed decide, factual and legal issues at the center of this litigation.  Samsung therefore asks the Court to stay this case pending final resolution of the *Oculus Litigation*.

ZeniMax raises substantially overlapping factual and legal issues in the *Oculus Litigation* and this case, including: whether Oculus misappropriated alleged ZeniMax trade secrets; whether the "Oculus Mobile SDK" infringes ZeniMax copyrights; whether Defendants disclosed any protected ZeniMax information in violation of a contract; whether the parties engaged in unfair competition; and whether ZeniMax has suffered any ongoing harm.  *See* First Amended

Complaint, ECF No. 12 at 25−35.  Proceeding with this case while ZeniMax litigates these same issues before Judge Kinkeade (and then likely the Fifth Circuit) would waste judicial resources. Proceeding would also risk inconsistent decisions, or decisions that could be undone entirely by another court.  When a final outcome is reached in the *Oculus Litigation*, issues ultimately decided against ZeniMax will have dispositive repercussions here.

In sum, a stay would avoid the potential waste of judicial and party resources created by inconsistent rulings and other inefficiencies.  These inefficiencies would likely result if this case proceeds before the *Oculus Litigation* comes to an end.

## II.    Background.

### A.    ZeniMax sued Oculus on claims related to VR technology.

In May 2014, ZeniMax sued Oculus and its founder, Palmer Luckey.  It later joined additional defendants, Facebook Inc., Brendan Iribe, and John Carmack (all five collectively, the "*Oculus* Defendants").    ZeniMax brought a variety of claims, including trade secret misappropriation, copyright infringement, breach of contract, tortious interference, and unfair competition.  *See Oculus* Second Amended Complaint, A045-A058, Ex. A at 44−57.  All of those claims shared a common factual core: ZeniMax alleged that the *Oculus* Defendants wrongfully took information and used that information to develop VR technology (that they eventually licensed to Samsung).  *Id.* at A002-003, Ex. A at 1−2.

### B.    ZeniMax raised particular factual and legal issues against Oculus.

ZeniMax alleged in the *Oculus Litigation* that it "provided [] [Oculus] with access to intellectual property developed by ZeniMax," including "copyrighted computer code, trade secret information, and technical know-how."   *Oculus* Second Amended Complaint, A002, Ex. A at 1.  That case went to trial in January 2017.  Among other things, ZeniMax asked the jury whether Oculus's conduct or Software Development Kit code ("SDK") misappropriated

ZeniMax trade secrets related to "programming code, methods, plans, designs, concepts, improvements, modifications, research data and results, and know-how related to virtual reality headsets," or virtual reality trade secrets related to "latency reduction . . . head and neck modeling . . . predictive tracking . . . distortion," and more.  *Id.* at A045.  ZeniMax asked the jury whether the Oculus SDK infringed specific ZeniMax copyrights.  *See Oculus Litigation* Jury Verdict, No. 3:14-CV-01849-K, ECF No. 914 at 21.  It also asked the jury whether Oculus's conduct and alleged use of ZeniMax materials amounted to tortious interference or unfair competition.  *See id.* at 49, 53.  ZeniMax then argued to the jury that Samsung VR's products rely on the Oculus materials that encompass ZeniMax's trade secrets and copyrighted materials. *See, e.g.*, ECF 944 at 128.

**C.    The *Oculus Litigation* jury decided issues litigated in that case.**

The jury found that none of the *Oculus* Defendants misappropriated any ZeniMax trade secrets and that none of them were liable for tortious interference or unfair competition. *See Oculus Litigation* Jury Verdict, No. 3:14-CV-01849-K, ECF No. 914 at 18, 51, 56.  But the jury found in favor of ZeniMax on its claims for copyright infringement, breach of Non-Disclosure Agreement (the "NDA"), and trademark infringement.  *See id.* at 35−36, 38−39 (copyright); 45−46, 48 (NDA); 71, 73, 75 (trademark).  The *Oculus* parties have filed post-trial motions, which were heard by Judge Kinkeade on June 20, 2017.  Judge Kinkeade has not yet entered judgment.

**D.    ZeniMax now has sued Samsung raising largely-overlapping issues and claims.**

Despite its long-standing knowledge of Samsung's involvement with Oculus, ZeniMax chose not to sue or join Samsung in the *Oculus Litigation*.  Nearly three years after initiating the *Oculus Litigation*, ZeniMax now has decided to sue Samsung, raising issues essentially identical to those in the *Oculus Litigation*—that through tortious interference and unfair competition,

Oculus created code that contains stolen ZeniMax trade secrets and copyrighted materials, and that the very same code powers the Samsung Gear VR products.  *See* First Amended Complaint, ECF No. 12 at 2−3.  Many of these same factual and legal issues were decided *against* ZeniMax in the *Oculus Litigation*; such determinations are binding against ZeniMax under the doctrine of collateral estoppel (or issue preclusion).  But rather than waiting for the *Oculus* courts to finish their work, ZeniMax rushed to this Court, apparently in an effort to secure a different result on the same issues.[1]  Because those overlapping issues will have a direct impact on the validity of ZeniMax's claims against Samsung, this case should not proceed until the *Oculus Litigation* reaches its final conclusion.

## III.    The Court Should Stay This Case Pending Final Resolution Of The *Oculus Litigation*.

### A.    This Court should stay this case out of concern for judicial efficiency.

This Court has broad discretion to stay this action pending resolution of the *Oculus Litigation*, and should exercise that discretion.   A court's power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Miramore Trust v. United Van Lines, LLC*, No. 3:15-CV-3049-D, 2017 WL 661374, at *4 (N.D. Tex. Feb. 17, 2017) (Fitzwater, J.); *Greco v. Nat'l Football League*, 116 F. Supp. 3d 744, 761 (N.D. Tex. 2015) (Lynn, J.).   Where substantially similar issues are currently pending in another trial or appellate court—as is true in this case—courts frequently exercise their discretion to stay cases.  *See Wolf Designs, Inc. v. Donald McEvoy Ltd.*, 341 F. Supp. 2d 639, 645−46 (N.D. Tex. 2004) (Fish, C.J.) (staying case while previously filed

---

[1] ZeniMax failed to comply with Local Rule 3.3, which requires the Plaintiff to file with the Complaint a Notice of Related Case because this lawsuit and *Oculus* "arise[] from a common nucleus of operative fact."  N.D. Tex. L.R. 3.3(a), (b)(3).

related case was pending in another district court because of the substantial overlap of claims, questions of fact, and discovery); *see also Greco*, 116 F. Supp. 3d at 761 ("A court is within its discretion to grant a stay when a related case with substantially similar issues is pending before a court of appeals.") (citing *Trinity Indus., Inc. v. 188 L.L.C.*, No. 3:02-CV-405-H, 2002 WL 1315743, at *3 (N.D. Tex. June 13, 2002) (Sanders, J.)); *Cont'l Holdings, Inc. v. Liberty Mut. Ins. Co.*, No. CIVA 09-00595, 2009 WL 3179257, at *1 (W.D. La. Sept. 29, 2009) (staying district court proceedings because the issues on appeal were the same issues that defined that case, and "the Fifth Circuit's decision will bind this Court").

Courts stay subsequently-filed cases with related subject matter because of the inherent "judicial efficiency in terms of the simplifying [] of issues, proof, and questions of law which could be expected to result from a stay." *Coker v. Select Energy Servs., LLC*, 161 F. Supp. 3d 492, 495 (S.D. Tex. 2015) ("Staying a case pending in a district court in the Fifth Circuit is appropriate when the district court anticipates that the Fifth Circuit will issue a ruling in an unrelated case that addresses unresolved issues in the stayed case.").

### 1. The Court should stay this case to avoid duplicative litigation and inconsistent rulings.

The parties here will call upon this Court to decide issues that presently are pending before Judge Kinkeade (and likely will be taken up by the Fifth Circuit) in the *Oculus Litigation*. This is the archetypal case for a stay—where another court in an earlier filed case has the power to "render an effective judgment on issues that are necessary to the disposition of the stayed litigation." *Cont'l Holdings Inc.*, 2009 WL 3179257, at *1 (staying district court proceedings pending Fifth Circuit decision on same issues). "Where two actions involving the same parties and the same issues are pending before two federal courts, it has been held that the court in which the second proceeding is initiated will normally, in the absence of countervailing factors,

stay the proceeding pending the outcome of the prior similar suit[.]"  *Nelson v. Grooms*, 307 F.2d 76, 78 (5th Cir. 1962).

There is substantial overlap of issues between the two ZeniMax cases; they are based upon similar allegations of wrongful conduct and the same technology.  Final resolution of the issues ZeniMax lost in the *Oculus Litigation* will have preclusive effect in this case and therefore simplify, and potentially eliminate, some or all of ZeniMax's claims.  *See Adaptix, Inc. v. Pantech Wireless, Inc.*, No. 6:13CV778, 2016 WL 7364674, at *2 (E.D. Tex. Jan. 12, 2016) ("Staying the case pending the appeal of the [related case] will promote judicial efficiency and conserve the parties' resources by alleviating the need at this time for briefing and consideration of [the pending] preclusion motion.").  For example, the issue of whether any Oculus technology misappropriated ZeniMax trade secrets was fully litigated in the *Oculus Litigation*.  If a final *Oculus Litigation* judgment concludes that Oculus technology does not misappropriate any such secrets, ZeniMax would be barred from relitigating the same issue in this case because ZeniMax bases its trade secrets claim solely on the same Oculus technology—no other aspects of the Samsung Gear VR products.  *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (issue preclusion "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court[.]") (citation and internal quotation marks omitted).  Neither the parties nor this Court need to expend resources on a failed trade secrets claim.  The same is true for the other issues on which the jury ruled against ZeniMax (tortious interference, unfair competition) and any issue that ZeniMax litigated but might lose as a matter of law (*e.g.*, breach of contract, copyright infringement) in the post-trial proceedings or on appeal.

ZeniMax alleges that the technology used by Samsung is the same technology at issue in the *Oculus Litigation*, and was acquired *through* the *Oculus* Defendants.  The similarity of the

complaint language in the *Oculus Litigation* and in this case demonstrates the overlap of allegations and issues in the two cases. In the following table, bold face type is used to show examples of where identical language appears in the two complaints:

| *Oculus* Second Amended Complaint (Ex. A) | Samsung First Amended Complaint (ECF No. 12) |
|---|---|
| • *Oculus* Defendants misappropriated "**valid and enforceable trade secrets" of ZeniMax** related to **"confidential programming code, methods, plans, designs, concepts, improvements, modifications, research data and results, and know-how related to virtual reality headsets; interfaces between virtual reality headsets and interactive entertainment content and/or software; sensors and optical components calibration; latency reduction; low-latency head-tracking, including positional and absolute tracking; head and neck modeling; predictive tracking; chromatic aberration reduction; distortion, motion blur, and jitter/judder reduction; pre-warping of displayed images; combining and selecting devices, displays, cables, optics, and related hardware solutions best-suited for improving the user's virtual reality experience; minimizing or removing the "screen door" effect on the display; minimizing simulator sickness and/or motion sickness for users**; and creating a commercially viable virtual reality headset." A045, Ex. A at 44. | • Samsung improperly acquired access through Oculus to "**valid and enforceable trade secrets" of ZeniMax** and misappropriated those trade secrets related to "**confidential programming code, methods, plans, designs, concepts, improvements, modifications, research data and results, and know-how related to virtual reality headsets; interfaces between virtual reality headsets and interactive entertainment content and/or software; sensors and optical components calibration; latency reduction; low-latency head-tracking, including positional and absolute tracking; head and neck modeling; predictive tracking; chromatic aberration reduction; distortion, motion blur, and jitter/judder reduction; pre-warping of displayed images; combining and selecting devices, displays, cables, optics, and related hardware solutions best-suited for improving the user's virtual reality experience; minimizing or removing the 'screen door' effect on the display; minimizing simulator sickness and/or motion sickness for users**." ECF No. 12 at 27. |
| • Oculus misappropriated "**valid, enforceable trade secrets in the confidential, proprietary components of ZeniMax's 'DOOM 3: BFG Edition' computer program code**." A045, Ex. A at 44. | • Through Oculus, Samsung misappropriated "**valid, enforceable trade secrets in the confidential, proprietary components of ZeniMax's 'DOOM 3: BFG Edition'" "computer program code**." ECF No. 12 at 27−28. |
| • The *Oculus* Defendants "**copied, publicly displayed, and distributed products (including versions of Oculus Software** | • Samsung had access to ZeniMax copyrighted materials through [the *Oculus* Defendants] and has "**copied, publicly** |

| *Oculus* Second Amended Complaint (Ex. A) | Samsung First Amended Complaint (ECF No. 12) |
|---|---|
| Development Kits ("Oculus SDKs")) derived from ZeniMax's Copyrighted Materials in whole or in part, and will continue to do so." A048, Ex. A at 47. | displayed, and distributed products, such as ["Oculus Mobile SDK and related software required for the Samsung Gear VR to function"], that utilize or are derived from ZeniMax's Copyrighted Materials in whole or in part, and will continue to do so." ECF No. 12 at 26. |
| • "Facebook interfered with the [NDA] by willfully and intentionally causing Oculus and Luckey to use ZeniMax's Contract protected Information for a purpose not approved by ZeniMax[.]" A051, Ex. A at 50. | • "Samsung interfered with the . . . NDA by willfully and intentionally causing Carmack, Luckey, and Oculus to use ZeniMax's contract-protected information without permission[.]" ECF No. 12 at 36. |
| • The *Oculus* Defendants engaged in unfair competition by depriving "ZeniMax of the control and dissemination of proprietary inventions and confidential know-how concerning" virtual reality technology. A052, Ex. A at 51. | • "In partnership with Oculus," Samsung engaged in unfair competition by depriving "ZeniMax of the control and dissemination of proprietary inventions and confidential know-how concerning" virtual reality technology. ECF No. 12 at 33. |

Here, a stay would promote judicial efficiency because the outcome of the related case and appeal could "determine the appropriateness and necessity of the case before this Court." *Trinity*, 2002 WL 1315743, at *3. In *Trinity* the parties disputed payment of a railcar repair contract. *Id.* at *1. The plaintiff failed to inform the court that there was a related case involving the same issue and awaiting a decision from the Seventh Circuit. *Id.* Before filing an answer to the complaint, the defendant moved for a stay pending the Seventh Circuit decision. *Id.* In granting a stay, the court concluded that "[i]t would be inefficient to proceed with this case only to find that the [first] case was later remanded and that the parties were litigating the same issues in two separate cases." *Id.* at *3. Therefore, Judge Sanders chose to stay proceedings until the court of appeals had a chance to rule. *Id.* The same is true here. The final resolution of the

*Oculus Litigation* would promote judicial efficiency because it would inform the Court and the parties of the "appropriateness and necessity" of this case, and of the issues, if any, that truly need to be litigated.  *See id.*

Judge Fish's decision in *Wolf Designs, Inc.* is similarly instructive.  341 F. Supp. 2d at 639.  There, two cases concerned the same product and the same patent.  *Id.* at 643.  Although, as here, the defendants in the second case were different, the court recognized that the presence of identical defendants was not a requirement to demonstrate duplication of the facts and issues.  *Id.* at 643−44 (citing *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997)).  The court concluded that because the two cases involved similar claims, witnesses, substantially related questions of fact, and overlapping discovery, "the court[] [was] entitled to be free from the waste of duplicative litigation."  *Id.* at 645−46.

Additionally, proceeding in this case while substantially overlapping issues remain unresolved in the *Oculus Litigation* creates the risk of inconsistent decisions.  *See id.* at 645 (allowing two courts to address the same claims creates "a heightened risk of inconsistent rulings which, in turn, promotes uncertainty and impedes the administration of justice") (citation omitted).  Given the overlap in legal issues, an appellate decision in the *Oculus Litigation* could invalidate an early ruling in this case, which could require this Court to amend its own ruling and potentially undo steps already completed in this litigation—precisely the kinds of inefficiencies a stay is intended to prevent.  *See id.*

### 2.   A stay will conserve judicial resources by streamlining the issues for trial.

Efficiency is best served by a stay of this case pending final resolution of the *Oculus Litigation*.  Issues resolved in that case are likely to streamline and simplify the issues in this case.  *See Greco*, 116 F. Supp. 3d at 761.  For example, if the *Oculus Litigation* trial or appellate courts agree with the jury that none of the alleged Oculus conduct or technology misappropriated

any of ZeniMax's alleged trade secrets, then the determination on those actually-litigated issues would be preclusive here and would dispose of ZeniMax's trade secret claims against Samsung (which are based on identical allegations and depend upon resolution of the same issues).  *See Adaptix, Inc. v. AT&T Mobility LLC*, No. 6:12-CV-120, 2015 WL 12696204, at *5 (E.D. Tex. May 12, 2015) (a plaintiff who previously litigated and lost a claim is precluded from taking "another bite a the apple").

Courts in this District regularly have granted stays when the resolution of a related case would save the court and the parties time and resources.  In *Greco*, the plaintiffs, a group of ticket buyers in the Cowboys Stadium Super Bowl seating fiasco, moved for a stay pending the resolution of a related case with "nearly identical factual and legal issues."  *Id.* at 760.  The related case involved different plaintiffs, but involved issues that would impact *Greco*. Weighing the interests of the parties and the conservation of judicial resources, Judge Lynn reasoned that the issues on appeal (*e.g.*, DTPA claims, class certification) "[would] very likely bear on [*Greco*]" because the final outcome would "likely streamline issues for dispositive motions."  *Id.* at 761.  The court concluded that "the risk of duplicative litigation [was] too great for [the court] to ignore."  *Id.*; *see also Wolf Designs, Inc.*, 341 F. Supp. 2d at 643−46 (same); *Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. and Cmty. Affairs*, No. 3:08-CV-0546-D, 2014 WL 2815683, at *2 (N.D. Tex. June 23, 2014) (Fitzwater, J.) (granting stay while certiorari petition filed by the defendant was pending before the Supreme Court, partly to avoid expending "resources necessary to litigate a claim" that may end up "not legally viable"); *Trinity*, 2002 WL 1315743, at *3 (granting stay in same parties' litigation because it would be inefficient to proceed only to find that the related "case was later remanded and that the parties were litigating the same issues in two separate cases.").

The court in *Coker* went a step further:  "[s]taying a case pending in a district court in the Fifth Circuit is appropriate when the district court anticipates that the Fifth Circuit will issue a ruling in an *unrelated case* that addresses unresolved issues in the stayed case."  161 F. Supp. 3d at 495 (citing *Lincoln Gen. Ins. Co. v. Autobuses Tierra Caliente, Inc.*, CIV. A. 3:04-CV-1535–L, 2006 WL 2474096, at *1 (N.D. Tex. Aug. 28, 2006)) (emphasis added).  The court reasoned that waiting for the issues on appeal to be resolved, though in a case involving different parties, might avoid unnecessary discovery, substantial expenses, and might simplify and resolve issues presently before the court.  *Id.*

### 3.  The anticipated impact of issue preclusion supports a stay.

This case should be stayed for the additional reason that the final resolution in the *Oculus Litigation* will likely have preclusive effects on this case.  *See Adaptix, Inc.*, 2016 WL 7364674, at *2 (considering the preclusive effect of the appeal when deciding to grant a stay).  Samsung is not a party to the *Oculus Litigation*, and therefore cannot be bound by findings adverse to its interests in that case.  *See, e.g.*, *Taylor*, 553 U.S. at 893 ("[O]ne is not bound by a judgment in personam in a litigation in which he is not as designated as a party . . . .") (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)).  ZeniMax, however, *is* a party to the *Oculus Litigation* and had a full opportunity to litigate its allegations—and on several critical issues received an adverse result.

Legal and factual issues decided *against* ZeniMax in the *Oculus Litigation* are binding in this case under the doctrine of issue preclusion or collateral estoppel.  Collateral estoppel "prevents a plaintiff who previously litigated (and lost) a claim that certain technology infringed [] from taking 'another bite at the apple'" and the doctrine "may be applied in subsequent litigation involving parties who are *not* bound by the earlier judgment."  *Adaptix, Inc.*, 2015 WL 12696204, at *5 (citing *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors*

*USA, Inc.*, 617 F.3d 1296, 1312 (Fed. Cir. 2010)) (emphasis added).  By precluding parties "from contesting matters that they have had a full and fair opportunity to litigate," issue preclusion protects against "the expense and vexation attending multiple lawsuits, conserv[es] judicial resources, and foste[rs] reliance on judicial action by minimizing the possibility of inconsistent decisions."  *Taylor*, 553 U.S. at 892 (citation and internal quotation marks omitted).

Here, the jury determined that the Oculus technology does not utilize misappropriated trade secrets, and that the conduct of the *Oculus* Defendants—including their creation and use of certain technology—did not constitute tortious interference or unfair competition.  *Oculus Litigation* Jury Verdict, No. 3:14-CV-01849-K, ECF No. 914 at 18, 51, 56.  If those ZeniMax losses become final, this case against Samsung will be simplified because the same issues are presented here.  Issue preclusion very likely will play a significant role in narrowing the issues in this case due to the substantial overlap of the allegations, evidence, witnesses, and claims; moving forward with this case before the *Oculus Litigation* issues have been finally adjudicated will leave the parties and the Court subject to the possibility that Judge Kinkeade or the Fifth Circuit will change the legal landscape of this case.  *See Int'l Assoc. of Machinists and Aerospace Workers v. Nix*, 512 F.2d 125, 132 (5th Cir. 1975) (applying collateral estoppel requires an already decided issue in the prior action).  Therefore, staying this action is warranted pending a final resolution in the *Oculus Litigation*.

The Eastern District of Texas recently issued a stay in similar circumstances.  *Adaptix, Inc.*, 2016 WL 7364674, at *1.  Summary judgment was pending in two related cases involving the same infringement issues disputed by AT&T in *Adaptix*.  *Id.*  In those two other cases, the court granted summary judgment for defendants against Adaptix, and Adaptix appealed.  *Id.* at *1–2.  Based on that summary judgment, AT&T moved to dismiss on its case, based on

preclusion.  *Id.* at *1.  Adaptix asked the court not to proceed in considering AT&T's motion to dismiss, arguing that the appeal in those two other cases would "control the decision on [AT&T's] preclusion motion[.]"  *Id.* at *2.  Rather than "needlessly" brief those issues again, Adaptix requested a stay until that appeal was decided.  *Id.*  The court concluded:

> Staying the case pending appeal of the [other cases] will promote judicial efficiency and conserve the parties' resources by alleviating the need at this time for briefing and consideration of AT&T's preclusion motion.  AT&T will suffer no prejudice from continuing the stay.  Nor will the stay give Adaptix any tactical advantage.  The Court, having considered the above factors, finds a stay of this case pending resolution of the appeals [in the other cases] would best serve the interests of the parties and judicial economy.

*Id.*  In the same way here, there is no need for this Court or the parties to use resources addressing issues that might ultimately be precluded by the final adjudication of the *Oculus Litigation*.

### 4.  The early stage of this case favors a stay.

A stay is appropriate in this case because it is still in its infancy—Defendants' responsive pleading deadline is still more than a month away.  No scheduling order yet exists, and there is no trial date set.  Nor, of course, is there a date for fact discovery to begin; the parties have not yet expended significant resources litigating the (largely overlapping) issues in this case.  "Staying a case at an early juncture 'can advance judicial efficiency and maximize the likelihood that neither the [c]ourt nor the parties expend their assets addressing invalid claims.'"  *See Landmark Tech., LLC v. iRobot Corp.*, No. 6:13cv411 JDL, 2014 WL 486836, at *3 (E.D. Tex. Jan. 24, 2014) (citing *Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 494 (D. Del. 2013) (alteration in original) (citation omitted)).  The Federal Circuit previously found this factor to "heavily" support a stay.  *See VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1315–17 (Fed. Cir. 2014) (reversing denial of stay where "[d]iscovery had not yet

begun and no trial date had been set").  Staying the case at the present juncture conserves the Court's and parties' resources so that they will later be expended only on truly necessary issues.

**B.**    **Samsung will suffer harm if forced to defend invasive and expensive litigation on issues that may ultimately be moot.**

Samsung will suffer harm if this case proceeds because it will be obligated to litigate issues that likely will be mooted or narrowed by the finalization of the *Oculus Litigation*. *See  Inclusive Cmtys. Project, Inc.*, 2014 WL 2815683, at *2 (pointing out that the claim before the court might turn out to be "not legally viable" because of a pending appeal).  ZeniMax raises a litany of duplicative claims and issues in this case.   Requiring Samsung to litigate these unsettled issues would force Samsung to write motions on issues that may ultimately go away, to serve and respond to invasive discovery that may become irrelevant, and to make strategy decisions that may be altered once the *Oculus Litigation* concludes.  Such burdensome wastes of resources are inequitable, and completely unnecessary when a stay is possible.  *Landis*, 299 U.S. at 254.

**C.**    **ZeniMax will not be unduly prejudiced by staying this litigation.**

A temporary stay of this case will not prejudice ZeniMax because it can later proceed against Samsung on claims that remain legally viable.  Indeed, ZeniMax cannot assert that time is of the essence when it has known about Samsung's relationship with Oculus at least since shortly after the *Oculus Litigation* commenced—but chose not to pursue Samsung for nearly three years.  First Amended Complaint, ECF No. 12 at 23.

ZeniMax also cannot be prejudiced by a stay because it does not compete with Samsung in the marketplace, and thus there is no market share to be lost.  *See Straight Path IP Grp., Inc. v. Verizon Commc'ns Inc.*, No. 16-CV-4236, 2016 WL 6094114, at *3 (S.D.N.Y. Oct. 18, 2016) ("the Court simply sees no reason (and [plaintiff] provides none) why the stay of an infringement

action initiated by [plaintiff] would impede its ability to license" technology in its portfolio). Samsung manufactures and sells electronic devices. ZeniMax develops video games.

The *Oculus Litigation* jury's conclusions also demonstrate that there is no risk of harm to ZeniMax if this litigation is temporarily halted. When asked what damages, if any, ZeniMax would suffer in the future resulting from Oculus's alleged infringement, the jury answered "zero dollars." *See Oculus Litigation* Jury Verdict, No. 3:14-CV-01849-K, ECF No. 914 at 48−49. Nor will ZeniMax be irreparably harmed if this case is stayed. Even if ZeniMax could demonstrate that it is injured by the ongoing marketing and sale of the Samsung Gear VR headset, damages could be recovered once the stay is lifted.

**D.    The requested stay is of finite duration and appropriate given the type of evidence involved**.

The stay requested by Samsung is "within reasonable limits." It would be a limited stay of finite duration—until the *Oculus Litigation* goes through the post-trial and appellate process. *See Landis*, 299 U.S. at 257. Courts frequently exercise their discretion to stay proceedings until a related lawsuit has been resolved, *see Greco*, 116 F. Supp. 3d at 761, and a stay pending the resolution of an appeal is not immoderate or considered to be of indefinite duration.

Additionally, a limited delay will not cause this litigation to become stale. The case centers on alleged copyright infringement and trade secret theft of specific lines and functions of particular computer code. The vital evidence is digital in nature (and capable of archival storage) and the number of relevant witnesses is limited, so the evidence is not likely to "fade" away with time, nor the witnesses likely to become less accessible. *See Wolf Designs Inc.*, 341 F. Supp. 2d at 646 n.5 (granting stay in part because there was no evidence that discovery, testimony, or documents presently available would not be available after the stay); *cf. Andrews v. United States*, No. 4:05-CV-419, 2007 WL 2315964, at *2 (E.D. Tex. Aug. 10, 2007) (denying stay

partly because the case relied on witnesses with military careers that would likely move away with the passage of time).

## IV.    Conclusion.

In short, the conservation of judicial resources and the interests of the parties weigh strongly in favor of granting a stay.  As demonstrated by the complaint comparison table above, there is substantial overlap between the issues in the *Oculus Litigation* and the core issues in this case.  Resolution of the *Oculus Litigation* could "determine the appropriateness and necessity of the case before this Court" or at the very least redraw the contours of this litigation.  *See Trinity*, 2002 WL 1315743, at *3.   A stay also will eliminate the risk of inconsistent decisions. Otherwise, rulings made in this case later may be in conflict with an appellate decision in the *Oculus Litigation*.  Moreover, judicial economy and party interests require a stay, as neither this Court nor the parties should be required to engage in discovery and grapple with motions on issues that likely will be resolved in the *Oculus Litigation*.

Samsung requests the Court to stay this case until the trial and appellate proceedings in the *Oculus Litigation* are concluded.

Dated:    June 23, 2017                    Respectfully Submitted,

                                                   **BAKER BOTTS L.L.P.**

                                                   */s/ Timothy S. Durst*
                                                   Timothy S. Durst
Texas Bar No. 00786924
tim.durst@bakerbotts.com
Russell J. Crain
Texas Bar No. 24045717
russ.crain@bakerbotts.com
Kristin Cope
Texas Bar No. 24074072
kristin.cope@bakerbotts.com
2001 Ross Avenue, Suite 1100
Dallas, TX 75201
(214) 953-6500
(214) 953-6503

Neil P. Sirota
neil.sirota@bakerbotts.com
30 Rockefeller Plaza
New York, NY 10112
(212) 408-2548
(214) 408-2501

Sarah J. Guske
sarah.guske@bakerbotts.com
101 California Street, Suite 3600
San Francisco, CA 94111
(415) 291-6200
(415) 291-6300

**COUNSEL FOR SAMSUNG ELECTRONICS
CO., LTD. and SAMSUNG ELECTRONICS
AMERICA, INC.**

### CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1, I certify that on June 23, 2017, I spoke with Theodore Stevenson, III, counsel for Plaintiffs, in an attempt to resolve the issues raised by this motion. Mr. Stevenson told me that Plaintiffs will not agree to the relief requested here.  Thus, the parties have been unable to resolve the matter.

*/s/ Timothy S. Durst*
Timothy S. Durst

## CERTIFICATE OF SERVICE

I certify that on June 23, 2017, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States District Court for the Northern District of Texas.

*/s/ Ruben Gandia*
Ruben Gandia