**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| ZENIMAX MEDIA INC. AND ID SOFTWARE LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>Defendants. | Civil Action No. 3:17-cv-01288-D<br><br>JURY TRIAL DEMANDED |

**REPLY IN SUPPORT OF**
**MOTION TO STAY PROCEEDINGS**
**<u>PENDING RESOLUTION OF THE RELATED *OCULUS* MATTER</u>**


**BAKER BOTTS L.L.P.**
Timothy S. Durst
Texas Bar No. 00786924
tim.durst@bakerbotts.com
Russell J. Crain
Texas Bar No. 24045717
russ.crain@bakerbotts.com
Kristin Cope
Texas Bar No. 24074072
kristin.cope@bakerbotts.com
2001 Ross Avenue, Suite 700
Dallas, TX 75201

Neil P. Sirota
neil.sirota@bakerbotts.com
30 Rockefeller Plaza
New York, NY 10112
Admitted *pro hac vice*

Sarah J. Guske
sarah.guske@bakerbotts.com
101 California Street, Suite 3600
San Francisco, CA 94111
*Pro hac vice* application pending

**COUNSEL FOR SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.**

The "crucial inquiry" for considering a stay is whether there is a substantial overlap of issues.[1] On that fundamental point, ZeniMax does not, and cannot, dispute that the core facts and legal issues underpinning ZeniMax's claims against Samsung are also at issue in the *Oculus Litigation*.[2] Those issues remain subject to review by Judge Kinkeade and the Fifth Circuit. The overlap creates great risk of inconsistent rulings and wasteful litigation unless this case is stayed.

ZeniMax's response primarily focuses on the merits of issue preclusion, which need not (indeed, cannot) be resolved until the dust settles in the other case. ZeniMax's ten pages of arguments on the merits of preclusion actually illustrate several ways that a final outcome in the *Oculus Litigation* will impact this case. For instance, ZeniMax argues that statutory (not common) law will apply to the trade secrets claims in this case. But ZeniMax does not mention the ruling in the *Oculus Litigation* that common law—and not the Texas trade secrets statute—applies because the alleged theft is asserted to have been ongoing in 2013, before the Texas statute was enacted. ZeniMax's plea to this Court to reach a different result runs headlong into the inconsistent ruling risk. Better to let the *Oculus Litigation* finish first.

Similarly, ZeniMax's request that this Court proceed with consideration of its tortious interference claim skates past two legal prerequisites that are still being scrutinized in the *Oculus Litigation*: (i) whether the contract is valid; and (ii) whether the contract was breached. If the *Oculus Litigation* defendants prevail on either argument, ZeniMax's claim against Samsung is dead on arrival. It only makes sense to let Judge Kinkeade and the Fifth Circuit reach a conclusion on validity and breach first.

---

[1] Substantial overlap of facts and issues is the prevailing question for this motion. *See Wolf Designs, Inc. v. Donald McEvoy, Ltd.*, 341 F. Supp. 2d 639, 643 (N.D. Tex. 2004) (Fish, J.) ("The 'crucial inquiry' is one of substantial overlap of the issues . . . ."); *Excentus Corp. v. Kroger Co.*, No. 3:10-CV-0483-B, 2010 WL 3606016, at *2, 4 (N.D. Tex. Sept. 16, 2010) (Boyle, J.) (same).

[2] *ZeniMax Media Inc. v. Oculus VR, LLC*, No. 3:14-CV-01849-K (the "*Oculus Litigation*").

Further, a stay poses no risk of prejudice to ZeniMax because it would not impair any remedy available to ZeniMax once the *Oculus Litigation* concludes. In short, money damages could address all of ZeniMax's alleged prejudice.

**I. Overlapping Issues And Potential Preclusion Favor A Stay.**

Overlap of facts and legal issues goes hand-in-hand with possible preclusion in supporting a stay of this case. Overlap of issues is frequently cited in this District as justifying stays. *See Wolf Designs*, 341 F. Supp. 2d at 645 (staying case based on substantial overlap of claims, facts, and discovery); *Greco v. Nat'l Football League*, 116 F. Supp. 3d 744, 761 (N.D. Tex. 2015) (staying case because appeal could revive issues previously adjudicated against plaintiff); *Excentus Corp.*, 2010 WL 3606016, at *2, 4 (staying case despite three new claims because main issue in both cases "centere[d] on whether [defendant] infringed certain patents"). Potential preclusion also can support a stay. *See Adaptix, Inc. v. Pantech Wireless, Inc.*, No. 6:13CV778, 2016 WL 7364674, at *2 (E.D. Tex. Jan. 12, 2016) (staying case because related appeal would "control the decision of any preclusion motion" on the present action). Overlap and preclusion fuel each other here: the profound overlap between this case and the *Oculus Litigation* makes it more likely that preclusion will clarify or dispose of issues in this case.

The full extent to which issue preclusion will ultimately work against ZeniMax remains undetermined. That makes a stay all the more prudent. ZeniMax apparently would have the Court try to resolve the preclusion issues now, which would only heighten the likelihood of conflicting rulings between the two cases. *Wolf Designs*, 341 F. Supp. 2d at 645 (allowing two courts to resolve the same issues "promotes uncertainty and impedes the administration of justice") (citation omitted). Even the *possibility* of preclusion weighs in favor of a stay; there is no need for the Court to decide now how issue preclusion ultimately will apply.

### A. Trade secret issues overlap almost completely with the *Oculus Litigation*.

The same basic allegation drives ZeniMax's trade secret claims here and in the *Oculus Litigation*: Oculus and its senior management allegedly stole ZeniMax's trade secrets beginning in 2013 and used them to develop illicit virtual reality ("VR") hardware. ZeniMax's Response at 3–6; Samsung's Motion to Stay at 2–3. ZeniMax does not dispute the substantial factual overlap between the cases; it cannot. The misappropriation allegations here are derivative of those in the *Oculus Litigation*, and the trade secrets at issue are the same. *Compare Samsung* First Am. Compl., ECF No. 12 at 27, 30 (identifying the categories of alleged trade secrets that Samsung supposedly obtained from the *Oculus Litigation* defendants), *with Oculus Litigation* Second Am. Compl., ECF No. 610 at 44 (same list of allegedly stolen trade secrets).

ZeniMax tries to distinguish the substantial factual overlap by focusing instead on a question not ripe for determination: Which law will ultimately apply to its trade secret claims? *See* ZeniMax's Resp. at 7–11 (asserting differences between common law, TUTSA (Texas trade secrets statute), and DTSA (federal trade secrets statute)). According to ZeniMax, TUTSA and DTSA should apply. *See id.* But ZeniMax's response does not disclose the prior ruling on this issue from the *Oculus Litigation*. In the *Oculus Litigation*, ZeniMax successfully argued that common law—and *not* TUTSA—applied to Facebook's alleged trade secrets theft, despite Facebook not arriving on the scene until after TUTSA's effective date of September 2013. The court determined that common law applied because the salient alleged bad acts "were initiated prior to the TUTSA." *ZeniMax Media, Inc. v. Oculus VR, LLC*, 166 F. Supp. 3d 697, 702–04 (N.D. Tex. 2015) (Solís, J.).[3] The same is true here. Just like its allegations against Facebook,

[3] In the *Oculus Litigation*, ZeniMax asserted that the September 2013-enacted TUTSA should not apply, even though it alleged that Facebook had misappropriated trade secrets by way of its July 21, 2014 acquisition of Oculus. Just like its allegations against Samsung here, ZeniMax's theory against Facebook was that it benefitted from the prior bad acts of Oculus. *See Oculus Litigation* [ZeniMax's Opp'n to Facebook's Mot. to Dismiss], ECF No. 67

ZeniMax alleges that Samsung has benefitted from a theft that allegedly began with Oculus and its management in 2013 prior to TUTSA.[4] ZeniMax's urging of this Court to apply TUTSA is not only an about-face, but also is an invitation for this Court to address nearly identical matters that are still coming to final rest in the *Oculus Litigation.* Once the *Oculus Litigation* concludes, this Court will be asked to assess whether ZeniMax is precluded or estopped from changing positions on the choice-of-law question. Until that time, however, it makes the most sense to stay this case.

ZeniMax's arguments about the differences between statutory and common law rush to the merits of preclusion, which are premature until the *Oculus Litigation* concludes. Even if ZeniMax eventually is allowed to reverse positions on whether common law applies, it will still face significant hurdles in circumventing its loss on trade secrets in the *Oculus Litigation*. Based on differently worded definitions of "trade secret" under the common law and TUTSA, ZeniMax argues that "the issue[s] at stake" in this lawsuit are not "identical" to those in the *Oculus Litigation*. ZeniMax's Resp. at 7−8 (quoting *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1290 (5th Cir. 1995)). But this argument misapplies the test for whether two issues are "identical." *See Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 n.90 (5th Cir. 2005) (en banc) (discussing different tests used by courts, all of which mean less than literally "identical").

---

at 9. ZeniMax here alleges that Samsung "improperly acquired access to ZeniMax's trade secrets through" Oculus and its management, who had themselves previously misappropriated those trade secrets. *Samsung* First Am. Compl., ECF No. 12 at 29, 31–32. The alleged misappropriation is the same. *Compare* ZeniMax's Resp. at 2–4, *with Oculus VR, LLC*, 166 F. Supp. 3d at 700–01. And just like in the *Oculus Litigation*, the alleged misappropriation here pre-dated TUTSA. ZeniMax's Resp. at 2–4.

[4] ZeniMax faces a related problem with DTSA's effective date. Under DTSA, "[a] plaintiff states a plausible claim for relief only if it 'sufficiently alleges a prohibited "act" occurring after May 11, 2016.'" *Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320, 338 (D. Del. 2017) (citation omitted). ZeniMax's DTSA claim does not allege that any prohibited acts occurred after that date. *Samsung* First Am. Compl., ECF No. 12 at 30–32. ZeniMax likely only will be able to rely on Texas common law to assert its trade secret claims. This, too, is an issue the Court can resolve (if needed) after a stay.

When governed by different law, issues are nevertheless identical for preclusion purposes unless "the legal standards governing their resolution are 'significantly different.'" *Id.* at 290.[5] ZeniMax's cited authority makes clear that to determine whether the definitions of trade secret are significantly different, more than "compar[ing] the issues in the abstract" is required. *Pentecost*, 44 F.3d at 1293, *cited by* ZeniMax's Resp. at 7. In *Pentecost*, the Fifth Circuit held that "the specific nature" of how the claims were pleaded "made what might otherwise be distinct issues identical." *Id.* The same is true here. How the *Oculus Litigation* was pleaded, litigated, and ultimately resolved may impact how issue preclusion applies in this case. *See In re Southmark Corp.*, 163 F.3d 925, 932–33 (5th Cir. 1999) (applying issue preclusion because of specific "way in which the [initial] proceeding was litigated"). ZeniMax cannot save itself from preclusion by drawing a "theoretically possible" distinction between the common law and statutory definitions of trade secrets. *Id.* at 933.[6]

At bottom, whether statutory or common law applies, and whether that makes a difference, should be sorted out in a robust way with briefing on the merits of preclusion (rather than in the context of a stay motion) and with the benefit of a final conclusion from the *Oculus Litigation*. ZeniMax's various arguments on the merits foretell the risks of trying to proceed on these issues now. A stay is the best approach.

---

[5] *Owens v. New York City Housing Authority* is beside the point. 934 F.2d 405 (2d Cir. 1991). ZeniMax portrays it as a case involving "definition[s] of 'job qualification' [that] varied between the state and federal claims." ZeniMax's Resp. at 8 n.3. In fact, the issue of "job qualification" was never before the state court. *Owens*, 934 F.2d at 409.

[6] As the Court will hear if the choice-of-law question ever matures in this case, there is not a significant difference between common law and TUTSA. Post statute, Texas courts continue to determine whether a trade secret exists based on the six common law factors from *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003). *See, e.g.*, *Miller v. Talley Dunn Gallery*, No. 05-15-00444-CV, 2016 WL 836775, at *2, 12 & n.15 (Tex. App.—Dallas Mar. 3, 2016, mandamus denied) (mem. op.). While not yet directly addressed in Texas, courts in other states have explained that the uniform statute "mostly codifies rather than modifies the common law . . . ." *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995) (Illinois UTSA); *accord, e.g.*, *Reingold v. Swiftships Inc.*, 210 F.3d 320, 322 (5th Cir. 2000) (Louisiana UTSA); *MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 520 (9th Cir. 1993) (California UTSA).

**B. The same copyright issues remain under review in the *Oculus Litigation*.**

ZeniMax's response gives the Court a lengthy summary of the trial evidence in the *Oculus Litigation*. ZeniMax's Resp. at 12–14. The effect is a concession that a stay makes sense here. Because of the substantial overlap between this case and the *Oculus Litigation*, unless ZeniMax ultimately prevails on the copyright claims against Oculus, it will be precluded from litigating any lost copyright issues against Samsung.[7] The best ZeniMax can do at this point is claim that a reversal in the *Oculus Litigation* is "unlikely." ZeniMax's Resp. at 12. But the fact remains that the copyright issues could be dramatically impacted by judgment, appeal, or even a payment of a judgment by Oculus.[8] The copyright claims are a key part of the *Oculus Litigation* defendants' post-trial briefing attacking the verdict, which includes a request for a new trial.[9] Until final resolution of the copyright issues in the *Oculus Litigation*, a stay is proper in light of the lack of clarity of the overlapping "issues, proof, and questions of law . . . ." *Coker v. Select Energy Servs.*, 161 F. Supp. 3d 492, 495 (S.D. Tex. 2015) (granting stay while case with related

---

[7] ZeniMax will be bound here by a loss on the copyright issues in the *Oculus Litigation*. *See Adaptix, Inc. v. AT&T Mobility LLC*, No. 6:12-CV-120, 2015 WL 12696204, at *5 (E.D. Tex. May 12, 2015) (issue preclusion "prevents a plaintiff who previously litigated (and lost) a claim that certain technology infringed [] from taking 'another bite at the apple'" and the doctrine "may be applied in subsequent litigation involving parties who are *not* bound by the earlier judgment") (emphasis added) (citing *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1312 (Fed. Cir. 2010)). The reverse is not true, of course, as Samsung cannot be bound because it was not a party to the prior case. *See* Samsung's Mot. to Stay at 11.

[8] A payment of money damages by Oculus would exhaust ZeniMax's remedies with respect to the copyrights. *See Oculus Litigation* [Defs.' Pre-Hearing Exec. Summ.], ECF No. 1057 at 4 ("The jury verdict [] forecloses [a] request for an ongoing royalty. A 'one-time payment for a life-of-[copyright] license' confers a fully paid license, and . . . 'cut[s] off the [copyright holder']s claims of entitlement to future compensation.'") (quoting *Prism Techs. LLC v. Spring Spectrum, L.P.*, 849 F.3d 1360, 1377−78 (Fed. Cir. 2017)) (alteration in *Oculus Litigation* brief); *see also Stewart Title Guar Co. v. Sterling*, 822 S.W.2d 1, 5 (Tex. 1991) ("It is a rule of general acceptation that an injured party is entitled to but one satisfaction for the injuries sustained by him. That rule is in no sense modified by the circumstance that more than one wrongdoer contributed to bring about his injuries. There being but one injury, there can, in justice, be but one satisfaction for that injury.") (citation omitted).

[9] *See Oculus Litigation* [Defs.' Mem. in Supp. of Mot. for JMOL], ECF No. 1006 at 16−24 (arguing that ZeniMax "failed to show substantial similarity of protectable elements" and presented no "objective evidence of damages"); *Oculus Litigation* [Defs.' Mem. in Supp. of Mot. for Partial New Trial], ECF 1007 at 12−18 (requesting new trial on copyright claims).

subject matter proceeded in part because of "judicial efficiency in terms of the simplifying [] of issues, proof, and questions of law which could be expected to result from a stay").

In sum, ZeniMax's recitation of the evidence in the *Oculus Litigation* serves only to support Samsung's request for stay. ZeniMax's response demonstrates that its allegations against Oculus are substantially similar to its allegations against Samsung. For example, ZeniMax alleges in both cases that source code was obtained through ZeniMax employees,[10] and that source code was used to develop Oculus technology.[11] Because of the substantial overlap, any ruling against ZeniMax by Judge Kinkeade or the Fifth Circuit could have profound effects on the copyright issues here.[12] There is no reason for this Court and the parties to move forward now, while there is a real risk that litigation efforts will be wasted.

### C. The "Luckey/Oculus NDA" is at issue in both cases.

ZeniMax's tortious interference claims against Samsung cannot proceed unless there is a valid contract that was breached.[13] The law is clear: there can be no interference without a valid

---

[10] *Compare* ZeniMax's Resp. at 12–13 (citing emails from Oculus seeking source code from ZeniMax employee to develop Oculus technology), *with Samsung* First Am. Compl., ECF No. 12 at 26 (Samsung benefitted from ZeniMax's code by gaining "access to [it] through current and former ZeniMax employees . . . .").

[11] *Compare* ZeniMax's Resp. at 14 (Oculus used code belonging to ZeniMax to solve technical issues by "cut[ting] and past[ing] ZeniMax's source code into Oculus's source code . . . ."), *with Samsung* First Am. Compl., ECF No. 12 at 14 (Samsung benefitted from technology that Oculus perfected by "cut[ting] and past[ing] ZeniMax code into Oculus's code . . . .").

[12] ZeniMax appears to have abandoned its prior claim that its copyright claims against Samsung are substantially different than its claims in the *Oculus Litigation*. In its prior briefing on extension of Samsung's response deadline, ZeniMax told the Court that a new, fourth copyright is asserted only against Samsung. ZeniMax's Opp'n to Mot. to Extend Answer Date, ECF No. 21 at 6; *see* ZeniMax's Resp. at 12. That was false; all four copyrights asserted here were at issue in the *Oculus Litigation*. *Compare Samsung* First Am. Compl., ECF No. 12 at 25–26 (the four copyrights asserted here), *with Oculus Litigation* [ZeniMax's Proposed Final J. & Perm. Inj.], ECF No. 958-1 at 3–4 (including all four copyrights also asserted here). ZeniMax's allegations stray from the facts in other instances, as well. From the first page of its response, ZeniMax stretches the record, claiming that Oculus admitted to stealing ZeniMax's proprietary VR technology. ZeniMax's Resp. at 1. That is not true. Oculus admitted no such thing; indeed, had it, the jury would not have returned a verdict against ZeniMax's trade secrets claims.

[13] ZeniMax's claim apparently is that Samsung somehow caused Oculus and its founder, Palmer Luckey, to breach their non-disclosure agreement ("NDA") with ZeniMax. *See Samsung* First Am. Compl., ECF No. 12 at 35 ("Samsung interfered with the . . . NDA by willfully and intentionally causing [*Oculus Litigation* defendants] to use ZeniMax's contract-protected information without permission and *in breach of* [their] obligations . . . [under] the NDA") (emphasis added). Whether there was a breach of a valid contract remains hotly contested in the *Oculus*

contract and a breach. *See John Paul Mitchell Sys. v. Randalls Food Mkts.*, 17 S.W.3d 721, 730−31 (Tex. App.—Austin 2000, no pet.) (to satisfy the willful and intentional interference element of the claim, the plaintiff must prove that the defendant "knowingly induce[d] one of the contracting parties to *breach* its obligations") (emphasis added). Both of those issues—validity and breach—remain pending before Judge Kinkeade. *See* ZeniMax's Resp. at 11 n.6.[14] An adverse ruling against ZeniMax on either issue by Judge Kinkeade or the Fifth Circuit could terminate ZeniMax's tortious interference claim here. To proceed with litigation on these points raises great risk of unnecessarily burdening Samsung with litigation time and expense, and also raises risk of inconsistent legal rulings between the cases.

### D. The unfair competition and unjust enrichment claims are predicated on other potentially precluded issues.

ZeniMax's unfair competition and unjust enrichment claims have at their core the same overlapping wrongs alleged in the *Oculus Litigation*—whether copyrights were infringed, trade secrets were misappropriated, and information was obtained in breach of the NDA. *See Samsung* First Am. Compl., ECF No. 12 at 32−33 ("Samsung committed one or more illegal acts, including copyright infringement and trade secret misappropriation . . . and violated the principles of the common law of unfair competition by attempting to profit from . . . the wrongful acts of [the *Oculus Litigation* defendants] . . . Samsung received, from [the *Oculus Litigation* defendants] intellectual property in violation of the NDA"). Thus, ZeniMax's unfair competition and unjust enrichment claims plainly are predicated on issues that overlap with the *Oculus Litigation*. An adverse finding in the *Oculus Litigation* on issues essential to

---

*Litigation*. *See Oculus Litigation* [Defs.' Mem. in Supp. of Mot. for Partial New Trial], ECF 1007 at 18−20 (challenging the jury verdict on the breach of NDA and requesting new trial).

[14] *See Oculus Litigation*, [Defs.' Mem. in Supp. of Mot. for JMOL], ECF No. 1006 at 27−30 (arguing that the contract is unenforceable because the terms are not "sufficiently definite to enable a court to understand the parties' obligations" and thus, the existence of a breach cannot be determined).

trade secrets, copyright infringement, or breach of the NDA could have preclusive effects on ZeniMax's unfair competition or unjust enrichment claims here. A stay would allow the resolution of those issues before this Court has to decide the merits of issue preclusion.

**II. Staying This Case Would Not Prejudice ZeniMax.**

ZeniMax offers an unsupportable argument on prejudice and largely ignores the fact that any injury resulting from a stay can be made a part of its damages claims. Moreover, ZeniMax's sudden urgency to proceed in this case is inconsistent with the fact that it has known about Samsung's relationship with Oculus literally for years, but just recently decided to sue Samsung. Claiming prejudice now, after choosing to wait nearly three years to sue Samsung, undercuts any claim of imminent or urgent harm.

ZeniMax's competitive injury argument does not refute the justification for staying this case. First, the response is internally inconsistent; ZeniMax's own list of Samsung's "closest competitors" (Oculus, HTC, Sony, and Google) does not include ZeniMax. ZeniMax's Resp. at 16. But more importantly, ZeniMax's claims of competitive injury demonstrate that any prejudice could be remediated by money damages. ZeniMax claims that Samsung might possibly attract users away from Sony's PlayStation VR and HTC's Vive, which in turn could potentially diminish ZeniMax's game sales (of three yet to be released video games). *See* ZeniMax's Resp. at 16–19. ZeniMax portrays this doubly speculative causal chain as inevitable—for every Gear VR sold, "ZeniMax loses a potential customer." *Id.* at 18 n.10. This kind of market share loss, if actually proven, is the classic type of harm that money damages can redress after the stay is lifted.[15]

[15] Besides, any harm claimed under this premise would be the result of ZeniMax's own doing; specifically, not making its video games available on the Samsung Gear VR. *Cf. Clapper v. Amnesty Int'l, USA*, 133 S. Ct. 1138, 1151 (2013) (plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending"); *Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 178

At the end of the day, the Court need not decide the competition issues in the context of this motion. Whether ZeniMax and Samsung are competitors is inconsequential to the stay analysis because any competitive harm could be compensated by money damages, if it is ultimately found to exist. Because there is no injury, and even if there was it could be compensated later, there is no prejudice to ZeniMax that counsels against a stay. On the other hand, the prejudice of proceeding—both to judicial efficiency and to Samsung in the form of needless litigation expense—is real and undeniable.

## III. Conclusion.

ZeniMax's merits arguments on preclusion are premature. Moreover, they are not necessary to the stay analysis. Moving forward with this case risks wasteful litigation and judicial inefficiency, in significant part because uncertainty exists about the exact impact of preclusion on ZeniMax's claims. That justifies a stay. Accordingly, Samsung requests the Court to grant its motion to stay this case until the post-trial and appellate processes in the *Oculus Litigation* conclude.

---

(D.C. Cir. 2012) (resulting injury from plaintiff's own choice would be "self-inflicted" and would "break the causal chain") (quoting *Petro-Chem. Processing, Inc. v. EPA*, 866 F.2d 433, 438 (D.C. Cir. 1989) (Ginsburg, R.B., J.)); *Parvati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512, 518 (7th Cir. 2010) (same).

Dated: July 28, 2017

Respectfully Submitted,

**BAKER BOTTS L.L.P.**

*/s/ Timothy S. Durst*

Timothy S. Durst
Texas Bar No. 00786924
tim.durst@bakerbotts.com
Russell J. Crain
Texas Bar No. 24045717
russ.crain@bakerbotts.com
Kristin Cope
Texas Bar No. 24074072
kristin.cope@bakerbotts.com
2001 Ross Avenue, Suite 700
Dallas, TX 75201
(214) 953-6500
(214) 953-6503

Neil P. Sirota
neil.sirota@bakerbotts.com
30 Rockefeller Plaza
New York, NY 10112
(212) 408-2548
(214) 408-2501
Admitted *pro hac vice*

Sarah J. Guske
sarah.guske@bakerbotts.com
101 California Street, Suite 3600
San Francisco, CA 94111
(415) 291-6200
(415) 291-6300
*Pro hac vice* application pending

**COUNSEL FOR SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.**

## CERTIFICATE OF SERVICE

I certify that on July 28, 2017, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States District Court for the Northern District of Texas.

*/s/ Ruben Gandia*
Ruben Gandia