**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| ZENIMAX MEDIA INC. AND ID SOFTWARE LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>Defendants. | Civil Action No. 3:17-CV-01288-D<br><br>JURY TRIAL DEMANDED |

**COURT-ORDERED FINAL REPLY**
**IN SUPPORT OF MOTION TO STAY PROCEEDINGS**
**PENDING RESOLUTION OF THE RELATED *OCULUS* MATTER**

Samsung's motion to stay presents only one question: does the "substantial overlap of the issues" in this case and in the *Oculus Litigation* make these two lawsuits "duplicative enough to warrant a stay" of this case? *Wolf Designs, Inc. v. Donald McEvoy Ltd.*, 341 F. Supp. 2d 639, 643 (N.D. Tex. 2004) (Fish, C.J.). "Where such substantial similarities exist, the parties and witnesses, the public, and the courts are entitled to be free from the waste of duplicative litigation." *Id.* at 645–46.

Twice now, when Samsung's briefs have described this substantial overlap and demonstrated that it warrants a stay, ZeniMax responded with arguments that largely focus on issues not central to the stay question. In its latest brief, ZeniMax did not even press its allegation of prejudice, which in any event is belied by ZeniMax's wait of nearly three years in suing Samsung.

Instead, ZeniMax's Surreply quibbles with Samsung's Reply on the margins, literally: Half of the Surreply focuses on two footnotes. ZeniMax's Surreply at 1–3 (discussing Samsung's Reply at 4 n.4, and at 6 n.8). It entirely fails to address, much less rebut, the central

premise of Samsung's Motion and Reply—that the substantial overlap between this case and the *Oculus Litigation* warrants granting a stay. *Cf. Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239–40 (N.D. Tex. 1991) (Fitzwater, J.) (noting that "[t]he office of the reply brief," and by extension the surreply, "is to rebut" arguments in prior briefing). The Surreply attempts to hurry the Court along to merits arguments that are better decided at a later stage, after robust briefing on preclusion (rather than stay) issues. Worse still for ZeniMax, its discussion of the merits arguments only reinforces the conclusion that these two cases substantially overlap.

**I. ZeniMax's own copyright arguments demonstrate the substantial overlap.**

ZeniMax's Surreply does not dispute that its copyright "allegations against Oculus are substantially similar to its allegations against Samsung," nor that both Oculus and Samsung allegedly obtained access to copyrighted materials in the same way and used them for the same purpose. Samsung's Reply at 7. Which means ZeniMax does not dispute that Samsung's alleged infringement is "largely derivative of" the infringement in the *Oculus Litigation*. *Wolf Designs, Inc.*, 341 F. Supp. 2d at 643. That is enough to justify a stay. *Id.* at 645–46.

ZeniMax's primary two arguments further illustrate the prudence of a stay. First, ZeniMax implicitly admits that there is overlap between this case and the *Oculus Litigation* as it relates to alleged copyright infringement <u>before</u> the verdict. *See* ZeniMax's Surreply at 1 (arguing only that post-verdict infringement is independent of the *Oculus Litigation*). Second, the full context of the Copyright Act's damages provision makes any award of Samsung's profits depend on the judgment that has yet to be entered in the *Oculus Litigation*. ZeniMax cherry-picks only the first subsection of the statute, while ignoring the next subsection, which clarifies it: A plaintiff may recover only "profits of the infringer that . . . are *not taken into account in computing the actual damages*." 17 U.S.C. § 504(b) (emphasis added). ZeniMax's copyright-damages case here, therefore, necessarily will have to take into consideration any actual damages

ultimately awarded in the *Oculus Litigation*. Even ZeniMax can hardly talk about these cases without stumbling upon an overlapping issue.

ZeniMax's critique of the authority and quotations in Samsung's Reply overlooks the significance of copyright exhaustion, not to mention the similarity between copyright and patent law on this point. The potential exhaustion of ZeniMax's copyright remedies against Samsung demonstrates the overlap between the two cases, whether or not exhaustion ultimately applies. As to ZeniMax's caselaw critique, the Supreme Court has for decades made clear that "it is appropriate to refer" to patent cases in copyright cases because of the "historic kinship between patent law and copyright law." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 439 (1984). Courts have referred to patent law in a variety of copyright contexts.[1] Along with being wrong about a payment in the *Oculus Litigation* impacting damages here,[2] ZeniMax's copyright arguments fail to show why the substantial overlap does not warrant a stay.

## II. Core trade-secret issues in these two cases are identical, regardless of whether common law, TUTSA, or DTSA governs.

There is profound overlap between the trade-secret issues here and those in the *Oculus Litigation*. *See, e.g.*, Samsung's Reply at 3–4 & n.3. ZeniMax's Surreply ignores that overlap and discusses only the question of which legal standard governs the merits of ZeniMax's trade-secret claims. ZeniMax's Surreply at 2–4. Not only is this question better left for another day, ZeniMax's discussion of it further demonstrates the appropriateness of a stay.

By drawing attention to Facebook's and Samsung's relationships to Oculus, ZeniMax underscores the overlapping core trade-secret issues. It may be true that Samsung is Oculus's

[1] *See, e.g.*, *Davis v. Blige*, 505 F.3d 90, 104 (2d Cir. 2007) (copyright licensing); *Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 965 (8th Cir. 2005) (copyright standard of review); *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 887 (9th Cir. 2005) (copyright standing).

[2] ZeniMax is also wrong about the "one satisfaction" rule's importance. It is not some esoteric mandate of the Texas Insurance Code, but rather is an "elementary principle of tort law" that applies to copyright-infringement claims. *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1277–78 & n.7 (11th Cir. 2008).

business partner while Facebook is Oculus's parent. But that makes no substantial difference for preclusion purposes here because ZeniMax predicates its trade-secret claims in both lawsuits on the same alleged misappropriation by Oculus and its management. *See Samsung* First Am. Compl., ECF No. 12 at 29, 31–32 (alleging underlying misappropriation by Oculus; its founder, Mr. Luckey; and a former ZeniMax employee, Mr. Carmack); *Oculus Litigation* Second Am. Compl., ECF No. 610 at 45–46 (same, but with generic reference to "former ZeniMax employees"). The *Oculus Litigation* court already has ruled that common law governs those misappropriation allegations. *ZeniMax Media, Inc. v. Oculus VR, LLC*, 166 F. Supp. 3d 697, 703–04 (N.D. Tex. 2015) (Solís, J.). Until the *Oculus Litigation* concludes, "the risk of inconsistent results" simply warrants a stay. *Wolf Designs, Inc.*, 341 F. Supp. 2d at 645.

That same overlapping misappropriation lurks within ZeniMax's DTSA claim, *Samsung* First Am. Compl., ECF No. 12 at 30–32, yet the Surreply focuses only on whether ZeniMax has properly pleaded that claim, ZeniMax's Surreply at 3 & n.1. On the merits of that pleading question, ZeniMax does not disclose an important split in authority: Distinguishing *Adams Arms, LLC* (on which ZeniMax relies), another court has ruled that a plaintiff failed to state a DTSA claim when it relied "on the *continued use of information* that was disclosed prior to the effective date of the statute." *Avago Techs. U.S. Inc. v. Nanoprecision Prods., Inc.*, No. 16-CV-03737-JCS, 2017 WL 412524, at *9 (N.D. Cal. Jan. 31, 2017) (emphasis added). Because of the unsettled nature of this issue, not to mention its fundamental overlap with the trade-secret issues in the *Oculus Litigation*, the Court should save this pleading question for later, when the parties have fully briefed it and the *Oculus Litigation* has concluded.

## III. Irrespective of their differences, the tortious-interference claims in both lawsuits share substantially overlapping issues.

ZeniMax agrees that "interference with the Luckey/Oculus NDA . . . was considered in the *Oculus Action*." ZeniMax's Surreply at 4; *see* Samsung's Reply at 7–8 & nn. 13–14 (detailing the overlap on this point). ZeniMax's assertions in this case regarding the Luckey/Oculus NDA may not be viable after the conclusion of the *Oculus Litigation*. Moreover, with respect to the other contract—the employment agreement of John Carmack, a former ZeniMax employee and current Oculus executive—ZeniMax's tortious-interference allegation echoes core elements from the *Oculus Litigation*. This issue turns on whether Mr. Carmack "use[d] ZeniMax's contract-protected information without permission," a key question in the *Oculus Litigation*. *Samsung* First Am. Compl., ECF No. 12 at 35; *see* Samsung's Mot. to Stay at 2–4 (summarizing facts from *Oculus Litigation*). In other words, the exact same NDA is at stake in both lawsuits, along with the same alleged conduct by Mr. Carmack. This overlap (and potential for inconsistent outcomes) justifies a stay. *See Landis v. N. Am. Co.*, 299 U.S. 248, 253 (1936) (Cardozo, J.) (rejecting suggestion that only "identical" issues justify a stay).

ZeniMax's contrary argument demonstrates its misunderstanding of the preclusion doctrine at stake. The overlap between these two cases creates the potential for issue preclusion to change the scope of this lawsuit considerably. *See* Samsung's Mot. to Stay at 11–13 (discussing "anticipated impact of issue preclusion" here). But ZeniMax latches on to purported differences between its <u>claims</u> in this case and those in the *Oculus Litigation*, while glossing over substantial overlap between the underpinning <u>issues</u>. ZeniMax's Surreply at 4–5. The differences between claims, however, relate to claim preclusion, not to issue preclusion. Issue preclusion can potentially impact any overlapping issue in this case—"even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). ZeniMax cannot

defeat the application of issue preclusion by purporting to identify minor or technical distinctions between its claims in these two cases.

Neither is it fair for ZeniMax to push the Court to decide now whether issue preclusion will apply to the overlapping issues. Issue preclusion only applies if "'the determination of the issue [was] . . . *a necessary part of the judgment* in that earlier action.'" *Davillier v. Sw. Sec., FSB*, No. 3:12-CV-2413-D, 2012 WL 6049014, at *3 (N.D. Tex. Dec. 5, 2012) (Fitzwater, C.J.) (quoting *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1290 (5th Cir. 1995)) (emphasis added). Thus, the time to decide issue preclusion is after final resolution of the *Oculus Litigation*. *See Adaptix, Inc. v. Pantech Wireless, Inc.*, No. 6:13CV778, 2016 WL 7364674, at *2 (E.D. Tex. Jan. 12, 2016) (staying case pending related appeal to "promote judicial efficiency and conserve the parties' resources" regarding "preclusion motion"). This uncertainty in the potential application of issue preclusion reinforces the conclusion that a stay is the best course.

## CONCLUSION

Offering no rebuttal of the substantial overlap between these two cases, ZeniMax's Surreply takes aim at two footnotes in Samsung's Reply. All that ZeniMax's arguments manage to show the Court, however, is even more overlap and a close relationship between the allegations in these related cases. ZeniMax's attempt to argue the merits of preclusion—besides missing the fundamental distinction between claim and issue preclusion—only further highlights these overlapping issues.

The chart that concludes ZeniMax's Surreply typifies these problems. First off, it shows how ZeniMax conflates the concepts of *claims* and *issues*. Under the heading "Issue," ZeniMax lists all the causes of action, or claims, from its complaint, along with two issues raised in the Surreply. For the reasons discussed in Parts I–II of this Final Reply, those two issues overlap with the *Oculus Litigation*. Second, and more fundamental to Samsung's Motion, ZeniMax's

chart demonstrates its steadfast refusal to address the "'crucial inquiry'" for deciding whether to stay a case: "substantial overlap of the issues." *Wolf Designs, Inc.*, 341 F. Supp. 2d at 643 (quoting *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997)). By revising the chart to: (1) properly distinguish between claims and issues; and (2) focus on the substantial-overlap inquiry, ZeniMax's chart becomes a succinct demonstration of why a stay is warranted.

**UNDISPUTED SUBSTANTIAL OVERLAP OF ISSUES**

| **Claim (not issue as in ZM's chart)** | **Examples of Issue Overlap With *Oculus Litigation*** | **Is the Overlap Disputed by ZeniMax?** |
|---|---|---|
| Count 1 (Copyright Infringement) | • Samsung's Reply at 7 (describing allegations in both cases):<br>– "[S]ource code was obtained through ZeniMax employees . . . ."<br>– "[S]ource code was used to develop Oculus technology . . . ." | No |
| Count 2 (TUTSA); Count 3 (DTSA) | • Samsung's Reply at 3 (describing allegations in both cases):<br>– "Oculus and its senior management allegedly stole ZeniMax's trade secrets beginning in 2013 . . . ."<br>– "[T]he trade secrets at issue are the same." | No |
| Count 4 (Unfair Competition) | • *Samsung* First Am. Compl., ECF No. 12 at 33, *quoted by* Samsung's Reply at 8:<br>– Samsung "violated the principles of the common law of unfair competition by attempting to profit from ZeniMax's intellectual property and the wrongful acts of Oculus, Luckey and Carmack." | No |
| Count 5 (Unjust Enrichment) | • *Samsung* First Am. Compl., ECF No. 12 at 33, *quoted by* Samsung's Reply at 8:<br>– "Samsung received, from Oculus and Carmack[,] ZeniMax's intellectual property in violation of the NDA and Carmack's employment agreement." | No |
| Count 6a (Tortious Interference with Luckey/Oculus NDA) | • Samsung's Reply at 8:<br>– The "validity and breach" of the NDA "remain pending before Judge Kinkeade." | No |
| Count 6b (Tortious Interference with Carmack Employment Agreement) | • *Samsung* First Am. Compl., ECF No. 12 at 35:<br>– Mr. Carmack "use[d] ZeniMax's contract-protected information without permission."<br>– *See* ZeniMax's Resp. at 3–4 (summarizing alleged wrongdoing by Mr. Carmack, which largely relates to his work with Oculus, not Samsung). | No |

In light of this undisputed substantial overlap, Samsung respectfully requests the Court to stay all proceedings in this case until after the conclusion of the *Oculus Litigation*.

Dated: August 8, 2017

Respectfully Submitted,

**BAKER BOTTS L.L.P.**

*/s/ Timothy S. Durst*
Timothy S. Durst
Texas Bar No. 00786924
tim.durst@bakerbotts.com
Russell J. Crain
Texas Bar No. 24045717
russ.crain@bakerbotts.com
Kristin Cope
Texas Bar No. 24074072
kristin.cope@bakerbotts.com
2001 Ross Avenue, Suite 700
Dallas, TX 75201
(214) 953-6500
(214) 953-6503

Neil P. Sirota
neil.sirota@bakerbotts.com
30 Rockefeller Plaza
New York, NY 10112
(212) 408-2548
(214) 408-2501
Admitted *pro hac vice*

Sarah J. Guske
sarah.guske@bakerbotts.com
101 California Street, Suite 3600
San Francisco, CA 94111
(415) 291-6200
(415) 291-6300
*Pro hac vice* application pending

**COUNSEL FOR SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.**

**CERTIFICATE OF SERVICE**

I certify that on August 8, 2017, this document was served via the Court's ECF system. To my knowledge, no counsel of record have opted out of service via ECF.

*/s/ Vincent M. Wagner*
Vincent M. Wagner