IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ZENIMAX MEDIA INC., et al.,           §
                                      §
                Plaintiffs,           §
                                      §    Civil Action No. 3:17-CV-1288-D
VS.                                   §
                                      §
SAMSUNG ELECTRONICS CO.,              §
LTD., et al.,                         §
                                      §
                Defendants.           §

MEMORANDUM OPINION
AND ORDER

The court must decide whether it should stay this action pending the adjudication of

post-trial and appellate proceedings in a related case. Concluding that a stay will conserve

the court's resources, avoid duplicative litigation, and avoid inconsistent rulings, the court

stays the case.

I

This is a suit by plaintiffs ZeniMax Media Inc. and id Software LLC (collectively,

"ZeniMax," unless the context otherwise requires) against defendants Samsung Electronics

Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung"). ZeniMax is an

industry-leading publisher and developer of interactive entertainment that has invested

significant resources in researching and developing virtual reality ("VR") technology.

According to the first amended complaint ("amended complaint"), in May 2012, under the

protection of a binding Non-Disclosure Agreement ("NDA"),[1] ZeniMax provided Palmer

Luckey ("Luckey") and his company, Oculus VR, LLC ("Oculus"), access to ZeniMax's VR-

related intellectual property. Although Oculus and ZeniMax initially discussed the terms of

a license agreement that would permit Oculus to use ZeniMax's technology, when licensing

negotiations broke down, Oculus, with the assistance of John Carmack ("Carmack"),[2] began

to use ZeniMax's VR technology without a license and without permission, allegedly in

breach of the NDA and Carmack's employment agreement, and in violation of ZeniMax's

intellectual property rights.

In May 2014 ZeniMax sued Oculus and Luckey in *ZeniMax Media Inc. v. Oculus VR,*

*Inc.*, No. 3:14-CV-1849-K (N.D. Tex. ) (the "Oculus Action"). The case was tried to a jury,

which found in favor of ZeniMax on its claims for copyright infringement, breach of the

NDA, and trademark infringement.[3] The parties in the Oculus Action have filed post-trial

motions that have been briefed and are awaiting decision.

---

[1]According to the amended complaint, the NDA "(i) prohibited any use of ZeniMax technology except as approved by ZeniMax, (ii) provided that ZeniMax alone owned all the intellectual property it disclosed to Luckey, and (iii) further provided that ZeniMax owned all work derived from its proprietary VR technology." Am. Compl. ¶ 14.

[2]Carmack is the former Technical Director at id Software LLC, a wholly owned subsidiary of ZeniMax Media Inc., who headed ZeniMax Media Inc.'s research efforts in 2011 and 2012. ZeniMax contends that Carmack's employment was governed by an employment agreement that stated, *inter alia*, that all inventions created during his term of employment, including copyrighted works and all other intellectual property, would be the sole and exclusive property of ZeniMax.

[3]The jury found in defendants' favor on ZeniMax's claims for trade secret misappropriation under Texas common law, tortious interference, and unfair competition.

In the present lawsuit, ZeniMax sues Samsung, which announced on September 3, 2014[4] the release of its Gear VR, a mobile VR product marketed as being "powered by" Oculus. ZeniMax contends that Samsung licensed or otherwise received from Oculus VR technology that it knew, or reasonably should have known, included copyrighted code, trade secrets, and other intellectual property that Oculus had misappropriated from ZeniMax, and that was obtained in violation of the NDA, ZeniMax's copyrights, and Carmack's employment agreement. ZeniMax asserts claims for copyright infringement; trade secret misappropriation under theTexas Uniform Trade Secrets Act ("TUTSA"), Tex. Civ. Prac. & Rem. Code Ann. § 134A (West Supp. 2016); trade secret misappropriation under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836; unfair competition; unjust enrichment; and tortious interference with contract.

Samsung has not yet answered ZeniMax's amended complaint. Instead, it moves to stay the present action pending the adjudication of post-trial and any appellate proceedings in the Oculus Action. Samsung maintains that, although it is not a party to the Oculus Action, the final outcome of that case will impact factual and legal issues at the center of the instant litigation, and that, in the interest of judicial efficiency, the court should stay this action until the Oculus Action is concluded.

---

[4]Samsung released the Gear VR on November 27, 2015.

- 3 -

II

A district court has discretion to stay proceedings on its docket. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id*. The party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which [it] prays will work damage to some one else." *Id*. at 255. "The determination of whether to stay proceedings is best determined by weighing the competing interests of the parties and of the Court." *Miramore Tr. v. United Van Lines, LLC*, 2017 WL 661374, at *4 (N.D. Tex. Feb. 17, 2017) (Fitzwater, J.) (quoting *Busk v. Integrity Staffing Solutions, Inc*., 2013 WL 4786254, at *2 (D. Nev. Sept. 5, 2013)).

III

Samsung contends that the court should stay this case for judicial efficiency and to avoid duplicative litigation and inconsistent rulings; that the parties in this case will call upon the court to decide issues that are presently pending before Judge Kinkeade in the Oculus Action (and that will likely be taken up on appeal); that there is a "substantial overlap of issues" between the two cases (they are based on similar allegations of wrongful conduct and the same technology), Ds. Br. 6; that final resolution of the issues on which ZeniMax lost in the Oculus Action will have preclusive effect in this case and will simplify and potentially

eliminate some or all of ZeniMax's claims[5]; that proceeding in this case while substantially overlapping issues remain unresolved in the Oculus Action creates the risk of inconsistent decisions, and, given the overlap in legal issues, an appellate decision in the Oculus Action could invalidate an early ruling in this case; that a stay will conserve judicial resources by streamlining the issues for trial (such as, for example, whether Oculus' conduct or technology misappropriated any of ZeniMax's alleged trade secrets); that this case is "still in its infancy," *id*. at 13; that Samsung will suffer harm if forced to defend invasive and expensive litigation on issues that may ultimately be moot; and that ZeniMax will not be unduly prejudiced by staying the case since ZeniMax can later proceed against Samsung on claims that remain legally viable, ZeniMax chose not to pursue Samsung for nearly three years, and ZeniMax does not compete with Samsung in the marketplace and there is therefore no market share to be lost.

ZeniMax responds that a final judgment in the Oculus Action will not preclude ZeniMax's claims against Samsung, and that, in any event, the claims in this case are "nowhere close to identical" to those litigated in the Oculus Action. Ps. Br. 7. ZeniMax

_____

[5]For example, Samsung contends that the issue whether Oculus through its technology misappropriated any ZeniMax trade secrets was fully litigated in the Oculus Action. Samsung maintains that if it is determined in the Oculus Action that Oculus technology does *not* misappropriate any such trade secrets, ZeniMax would be barred from relitigating the same issue in this case because ZeniMax bases its trade secret claim solely on the same Oculus technology, not on any other aspect of the Samsung Gear VR products. It contends that "[t]he same is true for the other issues on which the jury ruled against ZeniMax (tortious interference, unfair competition) and any issue that ZeniMax litigated but might lose as a matter of law (*e.g.*, breach of contract, copyright infringement) in the post-trial proceedings or on appeal." Ds. Br. 6.

sued Oculus under Texas common law for trade secret misappropriation but brings its claims

against Samsung under statutes (TUTSA and DTSA) that differ materially in substance and

scope from the Texas common law claim at issue in the Oculus Action[6]; its tortious

interference claims in this case are predicated on interference outside the scope of the Oculus

Action because these claims are based on the conduct of *Samsung* in interfering with *two* of

ZeniMax's contracts (the NDA and Carmack's employment agreement), while the tortious

interference claim in the Oculus Action focused only on the conduct of defendant Facebook

Inc. ("Facebook") and alleged interference only with the NDA, not Carmack's employment

agreement; its copyright claims in this case are not subject to preclusion because ZeniMax

prevailed on its copyright claims in the Oculus Action and Samsung's arguments presuppose

that either the district court or the court of appeals will reverse the jury's finding of copyright

infringement on all three registered copyrights asserted in the Oculus Action; and its unfair

competition and unjust enrichment claims consider facts not litigated in the Oculus Action,

including the facts and circumstances under which Samsung received the stolen VR

technology and how it exploited this technology to profit at ZeniMax's expense.  On the

issue of prejudice, ZeniMax argues that a stay would permit Samsung to use stolen,

---

[6]ZeniMax contends that "trade secret" is defined differently (and more broadly) under TUTSA and DTSA than it is under Texas common law; that Texas common law offers additional, narrowing factors for the jury to consider in assessing whether information rises to the level of trade secret protection; and that the jury in the Oculus Action answered only a general verdict form that did not specify the factual or legal basis for its conclusion, so speculation would be required for the court to find that the jury verdict in the Oculus Action rests on a finding of fact common to all three standards.

unlicensed intellectual property to compete with ZeniMax: ZeniMax's success in the VR

market is directly tied to the platforms for which it produces titles (HTC Vive and Sony

PlayStation VR), Samsung competes with the HTC Vive and Sony PlayStation, Samsung

already has the largest customer base in the VR market, Samsung is quickly expanding its

market share, and "[t]he concrete marketplace prejudice that ZeniMax is incurring as a result

of Samsung's continued violation of ZeniMax's valuable intellectual property should not be

perpetuated by a stay that could extend for years." Ps. Br. 18.

Samsung replies that ZeniMax's arguments focusing on the merits of issue preclusion

are premature and that even the *possibility* of preclusion weighs in favor of a stay; that the

same basic allegation drives ZeniMax's trade secret claims here and in the Oculus Action

(i.e., Oculus and its senior management allegedly stole ZeniMax's trade secrets beginning

in 2013 and then used them to develop illicit VR hardware)[7]; that the same copyright issues

remain under review in the Oculus Action and could be dramatically impacted by judgment,

appeal, or even a payment of a judgment by Oculus[8]; that ZeniMax's tortious interference

---

[7]Regarding ZeniMax's argument that different laws apply to its trade secret claims in
this case, Samsung contends that, in the Oculus Action, ZeniMax successfully argued that
common law (and *not* TUTSA) applied to Facebook's alleged trade secrets theft because the
salient bad acts were initiated prior to TUTSA; that ZeniMax's urging this court to apply
TUTSA is not only an "about-face," but also an invitation for this court to address nearly
identical matters that are still being resolved in the Oculus Action; and that once the Oculus
Action concludes, this court will be asked to assess whether ZeniMax is precluded or
estopped from changing positions on the choice-of-law question.

[8]ZeniMax disputes that payment of money damages by Oculus would exhaust
ZeniMax's remedies with respect to the copyrights because Samsung's separate and
continuing acts of infringement of ZeniMax's copyrighted works are independently

claims against Samsung cannot proceed unless there is a valid contract that was breached, and both the validity of the NDA and the question of breach remain pending before Judge Kinkeade; that ZeniMax's unfair competition and unjust enrichment claims have at their core the same overlapping wrongs alleged in the Oculus Action (i.e., whether copyrights were infringed, trade secrets were misappropriated, and information was obtained in breach of the NDA), these claims are clearly predicated on issues that overlap with the Oculus Litigation, and an adverse finding in the Oculus Action on issues essential to trade secrets, copyright infringement, or beach of the NDA could have preclusive effects on ZeniMax's unfair competition or unjust enrichment claims here; and that any injury to ZeniMax resulting from the stay can be remedied by money damages.

IV

Having weighed the competing interests of the parties and the court, the court concludes in its discretion that Samsung's motion to stay should be granted. Although the parties, claims, and precise issues in this case differ in material respects from those in the Oculus Action, the court concludes that judicial resources will be conserved, and duplication of efforts avoided, if the court awaits a final decision from Judge Kinkeade (and, if an appeal is taken, the court of appeals), before proceeding in this action. *See, e.g., ACF Indus., Inc. v. Guinn*, 384 F.2d 15, 19 (5th Cir. 1967) ("A stay pending the outcome of litigation between the same parties involving the same or controlling issues is an acceptable means of avoiding

_____

compensable, and the Copyright Act authorizes the disgorgement of Samsung's profits *in addition* to actual damages measured under a royalty theory.

- 8 -

unnecessary duplication of judicial machinery.").

The Oculus Action is related to this action; the claims in both suits arise out of Oculus' alleged misappropriation of ZeniMax's intellectual property related to its VR technology. *See Wolf Designs, Inc. v. Donald McEvoy Ltd.*, 341 F.Supp.2d 639, 643 (N.D. Tex. 2004) (Fish, C.J.). Although ZeniMax's claims in this case are independent from its claims in the Oculus Action, there is substantial overlap in the underlying issues. *See id.* ("While the cases are far from identical, the court finds them duplicative enough to warrant a stay[.]"). Zenimax alleges in its amended complaint that "Samsung has used, and continues to utilize, ZeniMax's VR technology (or derivatives thereof) *that was misappropriated by Oculus* (now owned by Facebook) in its Samsung Gear VR which continues to be 'powered by Oculus.'" Am. Compl. ¶ 8 (emphasis added); *see also id.* ¶ 22 ("Samsung had licenced or otherwise received *from Oculus* VR technology which it knew, or reasonably should have known, *included copyrighted code, trade secrets, and other intellectual property that Oculus had misappropriated from ZeniMax, and that was obtained in violation of the NDA* and Carmack's employment agreement." (emphasis added)); *id.* ¶ 4 ("Samsung nonetheless obtained and used ZeniMax's VR technology *from Oculus*, without ZeniMax's consent." (emphasis added)). In other words, ZeniMax's claims against Samsung are predicated on *Oculus*' illegal "misappropriation" of ZeniMax's intellectual property. *See Wolf Designs, Inc.*, 341 F.Supp.2d at 643 ("Although the defendants in the Texas Action and the California Action are technically different, McEvoy's conduct is largely derivative of Collectives' conduct, which is at issue in the California Action."). But whether Oculus misappropriated

ZeniMax's VR technology by, *inter alia*, infringing ZeniMax's copyrights or breaching the

NDA are questions that have not yet been finally resolved in the Oculus Action.

Courts have held that stays are appropriate where there is the possibility that an

earlier-filed action will have preclusive effects in a later-filed action, or where at least some

of the issues in the case could be clarified or eliminated. *See, e.g., Adaptix, Inc. v. Pantech

Wireless, Inc.*, 2016 WL 7364674, at *2 (E.D. Tex. Jan. 12, 2016) ("Staying the case pending

appeal of the LG Case will promote judicial efficiency and conserve the parties' resources

by alleviating the need at this time for briefing and consideration of AT&T's preclusion

motion."). If, for example, after consideration of the parties' post-trial motions and any

appeals it is determined that Oculus did *not* misappropriate ZeniMax's copyrighted code or

that Oculus' obtaining any such intellectual property did *not* breach the NDA (including

because the NDA is not a valid contract), ZeniMax may be precluded[9] from relitigating these

issues in a second lawsuit.[10] *See, e.g. Ondova Ltd. Co. v. Manila Indus., Inc.*, 513 F.Supp.2d

762, 770 (N.D. Tex. 2007) (Fitzwater, J.) ("Under the doctrine of 'collateral estoppel, once

a court has decide an issue of fact or law necessary to its judgment, that decision may

---

[9]The court suggests only that there is a *possibility* of issue preclusion. It is not holding
that Samsung is in fact precluded from taking any specific position on any particular issue
in this case.

[10]Even assuming *arguendo* that the verdict on ZeniMax's common law trade secret
misappropriation claim stands and that ZeniMax will not be precluded in this case from
bringing claims against Samsung under TUTSA and DTSA, the possibility that Judge
Kinkeade or the court of appeals could overturn the verdict on ZeniMax's other claims
supports granting the stay.

preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980))). But without a final decision from Judge Kinkeade (or, if applicable, the court of appeals), the court cannot accurately assess whether or to what extent the doctrine of collateral estoppel may bar ZeniMax's claims in this case. Moreover, by addressing questions of preclusion in the absence of a final judgment (and with the possibility that the verdict in the Oculus Action could be overturned), the court risks not only the possibility that it will issue a ruling that later becomes inconsistent with the Oculus Action, but also unnecessarily duplicates judicial efforts. *See Wolf Designs, Inc*, 341 F.Supp.2d at 645 ("[T]he interest of justice may dictate [a stay] to prevent an extravagantly wasteful and useless duplication of the time and effort of the federal courts by the simultaneous trial of two complex and elaborate cases involving substantially the same factual issues." (citation omitted)). These factors weigh strongly in favor of granting a stay.

ZeniMax contends that a stay would "prejudice ZeniMax's ability to enforce its intellectual property rights and would permit Samsung to continue to exploit the VR market." Ps. Br. 16. But ZeniMax's argument presupposes that Samsung has, as ZeniMax maintains, "use[d] stolen, unlicensed intellectual property." *Id.* Whether the Oculus VR technology was "stolen" from ZeniMax has yet to be finally resolved. The court will not find that prejudice to the party opposing a stay outweighs the factors clearly favoring a stay based on

that party's view that it will ultimately prevail on the merits.[11]  Nor is the court convinced by

ZeniMax's argument that "[t]he sort of competitive injury that ZeniMax would incur from

its loss of market share in the VR game market would be difficult to quantify and, ultimately,

money damages would be an inadequate remedy."  *Id*. at 18.  ZeniMax has already delayed

any relief by waiting so long to sue Samsung, and it offers no reason why an award of

damages would not adequately compensate it for any losses it ultimately proves in its case

against Samsung.

 After balancing the competing interests, and taking into consideration the court's

interest in promoting judicial economy and avoiding unnecessary duplication of efforts and

inconsistent rulings, the court, in its discretion, grants the motion to stay.

* * *

 Accordingly, for the reasons explained, the court grants Samsung's motion to stay the

proceedings in this case until the trial and appellate proceedings (if any) in the Oculus Action

are concluded.  The court directs the clerk of court to close this case administratively for

statistical purposes.  The court will reopen the case on request of a party after determining

---

[11]Moreover, ZeniMax waited nearly three years after the Oculus Action commenced
to file the instant lawsuit, which undercuts the assertion that a stay would "unduly prejudice
ZeniMax's ability to enforce its intellectual property rights."  Ps. Br. 16.

that a stay is no longer warranted.

**SO ORDERED**.

October 25, 2017.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE